IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| NEW WEST HEALTH SERVICES, | CV 13-35-H-CCL |
| Plaintiff, | |
| -v- | ORDER |
| EXPRESS SCRIPTS SENIOR CARE, INC., | |
| Defendant. | |

*******

Before the Court is Plaintiff's Motion to Remand and request for expedited ruling. Plaintiff also seeks its attorney fees and costs incurred as a result of the alleged improper removal. Plaintiff asserts that the amount in controversy in this case does not exceed the sum or value of $75,000 as is required by 28 U.S.C. § 1332(a). Defendant opposes remand.

**Complaint**

Plaintiff's Complaint for Injunctive Relief and Declaratory Judgment is filed against Defendant Express Scripts Senior Care, Inc. ("Express Scripts"). Plaintiff New West Health Services ("New West") is a Montana corporation, and Express Scripts is a Delaware corporation with its principal place of business in St. Louis, Missouri. New West and Express Scripts entered into an agreement, effective on January 1, 2010 (the "Agreement"), whereby Express Scripts provided New West with management of prescription drug services to New West's members. The Agreement was terminated on December 31, 2012.

New West alleges that Express Scripts has failed to abide by the Agreement when it refused to make its records available for an independent audit required by a federal agency, the Centers for Medicare and Medicaid Services ("CMS"). New West alleges that Article III, Section 3.7(f)(ii) of the Agreement requires Express Scripts to make its records available for government auditing purposes "for a period of ten (10) years from the date of termination or expiration of the Agreement, or from the date of completion of any audit, whichever is later." (ECF

No. 4, Compl. at ¶ 15.)  The Agreement provides for payment to Express Scripts, but no additional compensation is specified for Express Scripts' provision of data for audit purposes.  New West asserts that Express Scripts must make the data available for audit purposes at no extra cost to New West.

For the year 2012 (as in each prior year of the Agreement), New West is required to submit certain data within Express Scripts' possession to independent auditing and reporting to CMS by June 30 (the "2012 Data Validation Audit") of the year following.  In the two prior years, Express Scripts provided its information for New West's Data Validation Audit without extra charge to New West.  (ECF No. 4, Compl. at ¶ 16.)  Apparently, this is the final data validation audit to be conducted under the Agreement, because the Agreement terminated at the end of 2012.

In addition to this annual data validation audit, CMS has also notified New West that it requires a financial audit of New West's 2011 Medicare prescription drug program (the "2011 Financial Audit").  New West has selected an independent auditor, HealthyPeople LLC ("HealthyPeople") to conduct an audit

of the financial data in the possession of Express Scripts.

According to the Complaint, Express Scripts will not cooperate in making its data available for either the 2012 Data Validation Audit or the 2011 Financial Audit, without further compensation. However, with the June 30, 2013, deadline for completion of the data validation audit and report to CMS approaching, the parties have been engaging in settlement negotiations.

Express Scripts has proposed that it make the necessary data available for audit purposes for additional compensation. (ECF No. 4, Compl. at ¶¶20-23.) The first proposal Express Scripts submitted to New West, on December 3, 2012, would have provided complete post-termination data support and services for the sum of $720,000. (ECF No. 4, Compl. at ¶ 21.) The second proposal Express Scripts submitted would have required New West to pay $38,000 for the 2012 Data Validation Audit services and an additional unspecified amount (at $150 per hour) for the 2011 Financial Audit. (ECF No. 4, Compl. at ¶ 23.) New West rejected Express Scripts' proposals for additional compensation for post-termination data and support services. As of the filing of the Complaint, Express

Scripts had already released to HealthyPeople the data necessary for preparation of the 2012 Data Validation Audit, but Express Scripts has threatened to sue HealthyPeople if it releases the data to CMS without Express Scripts' permission (which has not been granted).  (ECF No. 4, Compl. at ¶ 25.)

New West continues to refuse to pay Express Scripts additional compensation for the financial audit services for which New West claims it has already contracted and paid.  New West has claimed that if Express Scripts does not provide the data it needs to comply with the current audits, New West will fail the audits and incur sanctions, fines, administrative oversight costs, and possibly prevent New West from expanding its services and products.  To prevent any such damages from accruing, New West therefore requested a preliminary injunction compelling Express Scripts to immediately provide data and support to New West and HealthyPeople to comply with the 2012 Data Validation Audit and the 2011 Financial Audit.  New West further requested a declaratory judgment compelling Express Scripts to provide New West with data and support without further compensation pursuant to the Agreement.  In the alternative, New West requests a

declaratory judgment that requires Express Scripts to provide New West with data and support but sets the amount of reasonable compensation New West owes Express Scripts therefor. New West seeks reasonable costs and attorney fees pursuant to the Agreement, Article VII, Section 7.3(d)(I).

**Notice of Removal**

Defendant Express Scripts removed the case to federal district court on May 24, 2013. Express Scripts asserts that the amount in controversy exceeds $75,000 because Express Scripts is being "required to provide services to New West over the next several years, without compensation." (ECF No. 1, Notice of Removal at ¶ 13.) Citing the "either viewpoint rule," and *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001), Express Scripts contends that, from its viewpoint, the pecuniary result that would be directly produced by a judgment in favor of New West would be in excess of $75,000. Express Scripts estimates that the 2012 Data Validation Audit fee at the rate of $150/hour would be from $24,600 to $81,600, and the 2011 Financial Audit fee at the rate of $150/hour would be from $33,450 to $35,850. Express Scripts also believes that

CMS is likely to require another audit in 2014 that would again require approximately $30,000 in services provided by Express Scripts.[1]

**Motion for Remand**

Plaintiff New West challenges the amount in controversy and requests remand on the ground that Defendant Express Scripts improperly removed this case. New West asserts that on May 21, 2013, three days prior to removal, Express Scripts offered to provide New West with data and support for the two audits for a sum between $42,450 and $44,850. (ECF No. 10 at 3-4, citing 2nd. Aff. A. Beattie, ¶ 8.) New West concludes that this offer of settlement shows that removal is not proper as the amount in controversy requirement cannot be met.

**Legal Standard**

District courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

---

[1] Federal regulations require that one-third of the plan sponsors (such as Plaintiff New West) be chosen annually for a financial audit. 42 C.F.R. § 423.504(d)(1). The last possible financial audit for New West under the Agreement would occur in 2014 (for the 2012 plan year).

The burden to establish jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). If there is any doubt as to the right of removal, federal jurisdiction must be rejected. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

When removal is sought in a diversity jurisdiction case and the initial pleadings seeks nonmonetary relief, removal is proper if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the $75,000 threshold. 28 U.S.C. § 1446(c)(2)(B). The removing defendant bears the burden of establishing that it is "more likely than not" that the amount in controversy exceeds that amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). The facts cited in the removal petition must be based on more than conclusory or speculated assertions. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007). However, when the complaint is unclear or vague as to the amount in controversy, a district court may estimate the amount in its analysis under the preponderance of the evidence standard. *See*

*Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007). It is always the defendant's burden to establish that removal is proper. *See Moore-Thomas v. Alaska Airline, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

**Discussion**

Plaintiff moves to remand, disputing that the amount in controversy exceeds $75,000. Plaintiff argues that Defendant's recent settlement offer to perform the immediately required services for less than $50,000 is conclusive evidence as to the value of the amount in controversy. Defendant contends that the value of its post-termination services to New West for the next ten years is $720,000.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citation and internal quotation marks omitted). Here, the object of the litigation is the value of Defendant's services sought by Plaintiff to be compelled over a period of ten years following termination of the Agreement. Even assuming, *arguendo*, that the ten-year post-termination services have been previously purchased by New West, the

intrinsic value of those services is not zero (as Plaintiff argues).

The parties appear to be in agreement that during the current year alone the value of Defendant's services for the two audits is between $40,000 and $50,000. The need for future services during the subsequent ten-year period cannot be specified because it will depend on the auditing requirements of the federal oversight agency. However, any declaration that Defendant is required to provide the current services without compensation will inevitably result in a decision that any and all future services for the ten-year period will also be uncompensated.

Defendant cites *Lodal, Inc. v. Home Insurance Co. of Illinois*, 1998 WL 393766 (6th Cir. 1998) (incurring current defense costs of $25,000 in pending lawsuit, when jurisdictional amount was $50,000); *Ministry of Health Province of Ontario, Canada v. Shiley Inc.*, 858 F.Supp. 1426, 1431 (C.D. Cal. 1994) (finding future liability potentially greater than jurisdictional threshold amount); and *Mazucco v. Kraft Global Foods, Inc.*, 2011 WL 6935320 (D. N.J. 2011) (right to future payments calculated in jurisdictional analysis). These cases support the inclusion of Plaintiff's potential demands for future services in the Court's

jurisdictional analysis. Even if New West only required one additional year of service out of the approximately ten years remaining, that additional service could easily increase the total value of services at stake to in excess of the $75,000 threshold.

In short, the Court does not find the removal of this case to be unreasonable under all these circumstances (shifting though they may be since the complaint was filed in state court). In addition, the Court also takes into consideration the value of attorneys fees (when provided for by contract) in estimating the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (citing 14 C. Wright & A. Miller, *Federal Practice and Procedure,* § 3712). As of the time of removal, Plaintiff incurred attorney fees for preparation of the Complaint, for briefing and hearing Plaintiff's application for preliminary injunction (filed prior to removal), and for settlement negotiations. Plaintiff files no affidavit stating its attorney fees as of the time of removal, but it is clear that such fees are not trivial, and when added to the audit expenses (both current and future) they could easily cause the amount in controversy to exceed $75,000.

Finally, the Court does not disregard entirely Defendant's original valuation of its post-termination services at $720,000, which was made prior to the termination of the parties' agreement and prior to the filing of the Complaint.

Despite the closeness of the amount-in-controversy question and the potential strength of Express Scripts argument, with the filing of Plaintiff's Reply Brief (ECF No. 31), it has become clear that the value of the object of the litigation is not necessarily as large as the removal papers first indicated. It appears highly unlikely that there will be any future audits, other than the afore-mentioned thirty-percent chance of one more financial audit to be conducted in 2014. Beyond that, it appears that the current audit preparation and attorney fees are essentially the object of this litigation. Additionally, Plaintiff now informs the Court that the parties have recently settled their dispute regarding the 2012 Data Validation Audit. The settlement requires New West to pay Express Scripts $1,500 for the data that New West needs for its 2012 Data Validation Audit. Although a settlement offer is not conclusive as to value, it is relevant evidence "if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v.*

*Petsmart, Inc.*, 381 F.3d 837, 840 (9th Cir. 2002). It appears that, over the course of settlement negotiations, Express Scripts has significantly reduced the scope of services it has offered to New West, so it is not so much the dollar value of the service that has changed but the nature of the service itself. Combining the $1,500 settlement offer with the remaining financial audit services settlement offer yields a litigation valuation of approximately $37,350, plus attorney fees as of the time of removal.

Although the Court has felt strongly from the outset that this was a case requiring exercise of federal jurisdiction, enough doubt as to the right of removal has arisen that the Court concludes that federal jurisdiction must be rejected. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

**Conclusion**

Given all these circumstances, the Court finds that Defendant has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. Therefore, this Court lacks diversity jurisdiction. However, and although the motion for remand should be granted, the Court does not believe that

the removal itself was either improper or in bad faith. The Court finds that Defendant possessed an objectively reasonable basis for removal, and Plaintiff's request for attorney fees will therefore be denied.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Expedited Ruling (ECF No. 9) is GRANTED, and Plaintiff's Motion to Remand (ECF No. 9) is GRANTED.

The Clerk is directed forthwith to notify counsel and to mail a certified copy of this Order to the Clerk of the Montana First Judicial District Court, Lewis and Clark County, Montana.

Done and Dated this 11th day of June, 2013.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE